OPINION OF THE COURT
Samuel L. Green, J.
Defendants have moved to suppress evidence seized by a customs inspector during a warrantless border search of a car. Counsel have agreed to waive a hearing and to submit this motion upon the affidavits and memoranda before the court. There are two issues presented. The first issue deals with the standing of the defendants to question the violation of their constitutional rights by the search. The second issue is whether or not there was cause for the stop and seizure.
At approximately 9:15 p.m. on September 3, 1981, upon crossing the Peace Bridge from Canada into the United *106 States, defendants were detained for a customs search. No contraband or merchandise subject to duty was found on the defendants or in the car. A VISA card issued by M & T Bank to one Marie Jurek was discovered in a plastic cover in the shoulder strap uptake behind the driver’s seat. The customs agent dialed the number of the bank’s credit card authorization department and learned that the card was stolen. Some time later this information was confirmed by a bank security officer. The customs agent contacted the Buffalo police who arrived at the Peace Bridge at approximately 10:45 p.m. and arrested defendants for criminal possession of stolen property in the second degree, a class E felony (Penal Law, § 165.45, subd 2).
A defendant has no right to have evidence excluded as violative of Fourth Amendment rights unless the rights violated were his own. (Rakas v Illinois, 439 US 128; People v Ponder, 77 AD2d 223.) While a defendant is not required to establish that he owns the premises or property subjected to the search, he must show an invasion of his legitimate expectation of privacy. (Katz v United States, 389 US 347.) It is sufficient for a defendant to demonstrate that he had dominion and control over the premises or property by leave of the owner. (Jones v United States, 362 US 257, 267, overruled on other grounds; United States v Salvucci, 448 US 83.)
Defendant Regnet has met this burden of proof but defendant Altman has not. (Rawlings v Kentucky, 448 US 98.) Mr. Regnet had the keys to the car. He also had his wife’s permission to use the car to the exclusion of all others. He has standing to challenge the search of the car and the seizure of the credit card found in it. (United States v Ochs, 595 F2d 1247, 1253, cert den 444 US 955; United States v Portillo, 633 F2d 1313, 1317; see, also, United States v Arce, 633 F2d 689, 694.) Ms. Altman however was merely a passenger. She did not have the keys to the car or dominion and control over it and has failed to demonstrate a legitimate expectation of privacy in the car or the credit card. (Rakas v Illinois, 439 US 128, supra; United States v Smith, 621 F2d 483, cert den 449 US 1086.)
The specific limitations of the search and seizure power of a customs agent at the border are not found in case law. *107 Although some decisions shed light upon the constitutional considerations implicated in border searches (see, e.g., United States v Ramsey, 431 US 606; United States v Martinez-Fuerte, 428 US 543; United States v Brignoni-Ponce, 422 US 873; Carroll v United States, 267 US 132), one must turn to section 482 of title 19 of the United States Code for the express grant of a customs agent’s jurisdiction at the border. “Any of the officers or persons authorized to board or search vessels may stop, search, and examine, as well without as within their respective districts, any vehicle, beast, or person, on which or whom he or they shall suspect there is merchandise which is subject to duty, or shall have been introduced into the United States in any manner contrary to law, whether by the person in possession or charge, or by, in, or upon such vehicle or beast, or otherwise, and to search any trunk or envelope, wherever found, in which he may have a reasonable cause to suspect there is merchandise on or about any such vehicle, beast, or person, or in any such trunk or envelope, which he shall have reasonable cause to believe is subject to duty, or to have been unlawfully introduced into the United States, whether by the person in possession or charge, or by, in, or upon such vehicle, beast, or otherwise, he shall seize and secure the same for trial.”
As the Supreme Court recognized in United States v Ramsey (431 US 606, 611-614, supra), the “reasonable cause to suspect” requirement is a practical test less stringent than the probable cause standard of the Fourth Amendment. But the People have failed to meet even this relaxed standard because they have not proffered any justification whatsoever for the stop and search of the car.
In Ramsey (supra) the customs officer spotted eight bulky envelopes mailed from Thailand, a known source of narcotics. It was “reasonable to suspect” therefore, that the letters contained contraband or merchandise subject to duty rather than correspondence. In the case at bar there was nothing suspicious about defendants or the car while crossing the Peace Bridge. The defendants gave their name, address, and citizenship and provided a license and registration as requested. (Cf. People v Baldon, 51 AD2d *108 880, 881; People v Jeffries, 45 AD2d 6, 8, affd 38 NY2d 722.) The record is barren of any specific articulable fact from which a reasonable inference could be drawn to warrant the slightest suspicion that defendants were involved in illegal activity. (Terry v Ohio, 392 US 1, 16; Ojeda-Vinales v Immigration & Naturalization Serv. 523 F2d 286; United States v Riggs, 474 F2d 699, 703, cert den 414 US 820; United States v Salter, 521 F2d 1326.)
Moreover, assuming that the stop and search was valid, the seizure of the credit card was not. (Sibron v New York, 392 US 40, 65.) A VISA card is not “merchandise”. It is not a “commodit[y] or good that [is] bought and sold in business”. (Webster’s International Dictionary [3d ed].) The extensive review of the legislative history of section 482 of title 19 of the United States Code in United States v Ramsey (431 US 606, 613, 616-619, supra) reveals that the purpose of the statute was to prevent smuggling of aliens, contraband, or merchandise subject to duty. (See, also, United States v One Reo Sedan, 39 F2d 120, 122.) The regulations implementing the statute echo this purpose. (See 19 CFR 162.0-162.70.) CFR 162.21 (a) is particularly relevant because it states that the authority for seizures by a customs agent is limited to instances where the agent “has reasonable cause to believe that any law or regulation enforced by the Customs Service has been violated” (emphasis added). Since a credit card is not contraband or merchandise subject to duty, the Customs Service has no jurisdiction over it.
From the agent’s vantage point at the moment the credit card was seized it was at least as likely as not that Marie Jurek was a friend or relative of Mrs. Regnet who loaned her the card without the knowledge of either defendant. (See, e.g., People v Corrado, 22 NY2d 308; People v Baldon, 51 AD2d 880, supra.) At the time the agent first saw the credit card in the car he had no right to seize it because he “had no information that a crime had occurred or was about to take place, had not seen defendant do anything criminal, and [was] confronted only by facts susceptible of innocent interpretation.” (People v Howard, 50 NY2d 583, 590, cert den 449 US 1023; see, also, Coolidge v New *109 Hampshire, 403 US 443, 466; People v Etoll, 51 NY2d 840, 841.) Once the defendants produced appropriate proof .of their identification and citizenship the customs agent was obliged to release them on their way. A customs officer “may question the driver and passengers about their citizenship and immigration status, and he may ask them to explain suspicious circumstances, but any further detention or search must be based on consent or probable cause.” (United States v Brignoni-Ponce, 422 US 873, 881-882, supra; see, also, Dunaway v New York, 442 US 200, 212.)
This court recognizes that the standard in every Fourth Amendment case is reasonableness (see, e.g., Cady v Dombrowski, 413 US 433, 439) and that a routine search of a person’s effects is rendered reasonable by his decision to cross the border. (United States v Ramsey, 431 US 606, 609, supra; Carroll v United States, 267 US 132, 154, supra.) But the legality of a warrantless investigative stop depends upon its brevity and relative unintrusiveness. (United States v Brignoni-Ponce, 422 US 873, 881-882, supra; United States v Martinez-Fuerte, 428 US 543, 558-559, supra; Terry v Ohio, 392 US 1, 17-18, n 15, supra.) Because an exception to the general rule requiring a warrant based upon probable cause is involved in the present case, this court must be careful to maintain its narrow scope. (Terry v Ohio, 392 US 1, supra; see, also, Dunaway v New York, 442 US 200, 210, supra; Michigan v Summers, 452 US 692 [Stewart, J., dissenting opn, p 706].)
In the case at bar, the protracted detention of defendants while telephone calls were made, while the customs agent awaited verification of information received from those calls, and while the agent waited for the police to arrive, amounted to a seizure without probable cause in violation of defendant Regnet’s Fourth Amendment rights. Unlike the brief stop and frisking of a suspect for weapons justified in Terry (supra) by the governmental interest in protecting police officers confronting potentially armed suspects, and unlike the brief questioning of travelers within 100 miles of the Mexican border which generally took less than a minute (United States v Brignoni-Ponce, 422 US 873, 880, supra), the investigative detention of defendants for one *110 and one-half hours was much longer, was more intrusive, and was unjustified by any governmental purpose beyond the normal goals of criminal investigation. This court notes that section 110.2 (subd 1, par [a], cl [i]) of the American Law Institute’s Model Code of Pre-Arraignment Procedure (Proposed Official Draft, 1975) recommends that an investigative stop based on less than probable cause should never exceed 20 minutes and should occur only when there is reasonable suspicion of past or imminent commission of a crime “involving danger of forcible injury to persons or of appropriation of or damage to property”.
The People urge that because the customs agent relied on the “border search” exception and did no more than he mighr-properly have done with prior judicial sanction, this court should retroactively validate his conduct. But all constitutional safeguards do not evaporate simply because an intrusion of one’s legitimate expectation of privacy occurs at the border. The search and seizure in the present case was conducted in the unfettered discretion of the customs agent who did not have a warrant, probable cause, or consent. (Almeida-Sanchez v United States, 413 US 266, 270, supra.) Whatever guidelines were followed in this case were imposed by the customs agent himself. He was not required to present his estimate of probable cause for detached scrutiny by a neutral magistrate. Nor was he compelled during the conduct of the search and seizure to observe precise limits established in advance by court order.
There was ample time to obtain a search warrant and the People have not justified the failure to do so. (People v Hodge, 44 NY2d 553, 557; People v Spinelli, 35 NY2d 77, 81-82; see, also, People v Knapp, 52 NY2d 689, 697.) Lest the exception be mistaken for the rule it is crucial to recall that the border search exception to the warrant requirement of the Fourth Amendment is a very limited one “granted to customs officials for a particular purpose [and] it may not be used to circumvent the constitutional requirement of probable cause placed upon police officers.” (People v Esposito, 37 NY2d 156, 160.)
*111 Defendant Regnet’s motion to suppress is granted. Defendant Altman’s motion is denied since she is not “aggrieved” pursuant to CPL 170.20 (subd a).