OPINION OF THE COURT
Harold J. Roth wax, J.
The defendant herein has been indicted, with seven other defendants, for the crimes of conspiracy in the fifth degree (Penal Law, § 105.05) and criminal possession of stolen property in the first degree (Penal Law, § 165.50). The defendant has filed an omnibus motion seeking to dismiss the indictment for evidentiary insufficiency (CPL 210.20, subd 1, par [b]; 210.30), as jurisdictionally defective (CPL 210.20, subd 1, par [h]), and in furtherance of justice (CPL 210.40). The defendant also moves to sever his prosecution from his codefendants’ (CPL 200.40, subd 1) and to suppress physical evidence seized from his possession and statements he allegedly made to law enforcement personnel. (CPL 710.20, subds 1, 3.)
The court has inspected the Grand Jury minutes and finds that the jury was justified in finding the following facts: a truckload of garments belonging to Kener Enterprises and valued in excess of $175,000 was stolen from *552 Kennedy Airport in Queens County in early July, 1981. Subsequently, the garments came into the possession of Joseph and Peter Cassese and with the assistance of Frederick Adrion and Peter Franzese, were stored at the private residence of Richard De Leo in Bellemore, Long Island. Through the efforts of Peter and Joseph Cassese, Gina Porchent, Howard Helfant and others, the garments were sold to Domonic Pastoría, who was a resident of Pennsylvania. On or about July 13, 1981 Pastoría came to New York City. The Cassese brothers, Porchent and Helfant negotiated with Pastoría and others in New York County for sale of the stolen goods. Pastoría agreed to purchase the entire load. He arranged for the defendant Campbell to drive to New York in a truck owned by Pastoría to pick up the goods. On July 24, 1981, the defendant arrived in New York, and proceeded to Belle-more upon instructions of Peter Cassese by telephone. After the truck was loaded, the defendant returned to New York County where he was stopped by the police. The defendant was arrested and the truck and cargo were removed to the 13th Precinct. The truck was unloaded and the contents of the boxes were examined. The property was identified by the owners. Upon being questioned by the police, the defendant admitted working for Pastoría, but denied that he had driven to Long Island or had picked up any property outside of Manhattan.
THE SEARCH AND SEIZURE
The defendant moves to suppress the stolen merchandise, which was the cargo seized from the truck when the defendant was stopped and arrested. The threshold issue, of course, is whether the defendant has established a legitimate expectation of privacy in the area searched and/or the items seized. (Rakas v Illinois, 439 US 128; Rawlings v Kentucky, 448 US 98; United States v Salvucci, 448 US 83).
The defendant asserts that he drove the truck, which was registered to Pastoría with Pastoria’s consent; that he had exclusive dominion and control over the truck; that he kept personal property therein, including an overnight bag and that he was the custodian of the cargo. The People *553 contend that because the defendant did not own the truck or its contents he had no protectable interest therein.
The court finds the People’s position oversimplified. “While property ownership is clearly a factor to be considered in determining whether an individual’s Fourth Amendment rights have been violated * * * property rights are neither the beginning nor the end of [the] inquiry” (United States v Salvucci, supra, at p 91). Other considerations include whether the defendant had a lawful possessory interest in the thing seized or place searched; whether he had the right to exclude others therefrom; whether he might reasonably expect that the place or thing would remain free from governmental intrusion; and whether he took normal precautions to maintain his privacy therein. (See United States v Haydel, 649 F2d 1152.)
The defendant’s possession of the truck with the legitimate owner’s permission; his actual dominion and control over the truck and its contents at the time of the seizure; and his status as bailee of the cargo, gave the defendant the right to exclude any other save the owner from access to the truck or its contents, and created a legitimate expectation in the defendant that there would be no governmental intrusion therein. (United States v Ochs, 595 F2d 1247, 1253, cert den 444 US 955; cited with approval United States v Sanchez, 635 F2d 47, 64; United States v Posey, 663 F2d 37, 40-41; United States v Portillo, 633 F2d 1313, 1317; see Rakas v Illinois, 439 US, at p 149, supra.)
The court does not conclude, however, that the defendant’s possessory interest in the truck’s cargo was entirely coextensive with a constitutionally cognizable expectation of privacy in regard thereto. The defendant’s interest in the cargo amounted to a bailment, insofar as he was authorized to possess the truck and to exclude others from access to the cargo until it was delivered to the purported owner, Pastoría. (See United States v Richards, 638 F2d 765, 770, n 1; cf. United States v Odum, 625 F2d 626; United States v Goshorn, 628 F2d 697.) The defendant’s interest in the cargo was, however, limited to possession while en route for delivery. He was not free to dispose of the cargo as he pleased or to convert the contents thereof to his own use. There is nothing to indicate that the defendant was au *554 thorized even to examine the contents of the boxes and he, in fact, denies knowledge of the contents. The defendant’s expectation of privacy in regard to the cargo was reasonably no more than an ancillary interest to his possession and use of the truck. Accordingly, the court finds that the defendant had no reasonable expectation of privacy in regard to the contents of the cargo, apart from his dominion and control over the truck itself and over access to the cargo area. (Cf. United States v Egan, 501 F Supp 1252, 1268-1269 [ship’s master had no protectable interest in cargo]; United States v Hilton, 619 F2d 127, 129, 133, cert den 449 US 887, reh den 449 US 1026 [ship’s master had no standing to challenge search of briefcase found on board]; United States v McGrath, 459 F Supp 1258, 1270-1271, affd 613 F2d 361, cert den sub nom. Buckle v United States, 446 US 967 [bailee of truck had no protectable interest in another’s briefcase found therein].)
The evidence which the People seek to introduce against the defendant and which the defendant moves to suppress is the contents of the cargo. Despite the absence of any constitutionally cognizable interest in the evidence seized, the defendant is nonetheless entitled to a hearing to determine whether the seizure was the result of an exploitation of prior unlawful governmental intrusion into an area in which he can claim such an interest. Specifically, the defendant is entitled to a hearing limited to the issue whether the initial stop and seizure of the truck and keys to the cargo area was lawful and whether the ultimate seizure of the evidence was tainted by any preliminary illegality affecting the defendant’s expectation of privacy in regard to the truck. (Wong Sun v United States, 371 US 471; United States v Hansen, 652 F2d 1374, 1387.) Assuming the legality of the initial stop and seizure of the truck and removal of the cargo therefrom, the defendant is without standing to contest the removal of the contents of the cargo from the boxes. (Cf. United States v Chadwick, 433 US 1.)