OPINION OF THE COURT
William C. Brennan, J.
Upon his arrival at the JFK International Airport from an overseas flight, the defendant herein was searched by a customs officer performing secondary inspections in the vicinity of the United States customs inspection area. He was subsequently indicted and charged with criminal possession of a controlled substance in the third degree, to wit: heroin in the excess of one-half ounce.
Defendant now moves this court for (1) a Huntley hearing to suppress his alleged confession or admission; and (2) suppression of any and all evidence seized from his person or property under his control.
The first branch of the motion for a Huntley hearing is granted, on consent, to the extent that said hearing will be held at the court’s convenience, prior to trial. The court will, therefore, focus its attention on the second branch of the motion for suppression of the alleged heroin.
The entire argument espoused by the defendant in warranting suppression is set forth in counsel’s affirmation as follows: “The defendant informs me that he had passed *785 through customs and was leaving the airport, that he was walking and acting normally and doing nothing illegal. Further, he informs me that he was stopped and searched for no reason and without his permission.”
It is well settled that with respect to “border searches”, officials are permitted to search for contraband coming into the country without payment of duty or in contravention of statutory prohibitions (People v Esposito, 37 NY2d 156).
Section 1582 of title 19 of the United States Code (Customs Duties) provides in part that: “[A]ll persons coming into the United States from foreign countries shall be liable to detention and search by authorized officers or agents of the Government under such regulations [prescribed by the Secretary of the Treasury for the search of persons and baggage].” (See, also, US Code, tit 19, §§ 482, 1496.)
These statutes are read in conjunction with one another and are given the broadest possible interpretations. (United States v Ader, 520 F Supp 313.)
“This broad authority granted to Customs officials is based upon sovereignty and the need for national self-protection * * * Border searches play an integral part in the protection of these interests * * *
“Judicial recognition of this distinction [between searches generally and searches of persons or things entering the United States from abroad] has given rise to the term ‘border search,’ in order to distinguish official searches which are reasonable because made solely in the enforcement of Customs laws from other official searches made in connection with general law enforcement * * * Validity for this distinction is found in the fact that the primordial purpose of a search by Customs officials is not to apprehend the persons, but to seize contraband property unlawfully imported or brought into the United States.” (United States v Ader, supra, pp 320-321.)
In a case similar to the instant proceeding, the hearing court denied a motion to suppress where the defendant’s “bulky” look was sufficient to supply the “mere suspicion” necessary in a “border search.” (People v Furey, 42 Misc 2d 579.)
*786 In finding that at the time the defendant was taken into custody by the United States customs agents, he had not yet passed into that portion of the airport open to the public generally, and that he was still within the confined area which was under the jurisdiction and control of the United States Customs Bureau, the court in Furey (supra, p 580), held that:
“Under the circumstances this was a ‘border’ search and not a search after a completed entry. In the case of a ‘border’ search it is clear that the right to search ‘can lawfully be based on mere suspicion’
“There is no requirement, as there is in the ordinary search and seizure case, that the searching officers have ‘probable cause’ for making the search, as that term is used in the Fourth Amendment * * * nor is it a prerequisite that they have such ‘reasonably trustworthy information as would warrant a man of reasonable caution to believe that the defendants were guilty of the commission of crime’ * * * for in border cases, ‘The search which customs agents are authorized to conduct upon entry is of the broadest possible character’ ”.
Even in “border search” cases, however, “the legality of a warrantless investigative stop depends upon its brevity and relative unintrusi veness.” (People v Regnet, 111 Misc 2d 105, 109.)
In the instant matter, defendant has failed to assert that either of these two criteria was not, in fact, adhered to by the customs agent who detained and searched him.
The court is cognizant of the increased drug trafficking that has infiltrated this country at its borders.* It must, therefore, be considered reasonable that a person’s decision to cross the border into the United States be coupled with the expectation of a routine search of his person and property under his control. (People v Regnet, supra.)
Moreover, these expectations should in no way be lessened upon the premise that the initial customs inspection *787 was passed without incident, while the entrant is still on airport grounds.
Accordingly, the second branch of defendant’s motion for the suppression of evidence is denied in all respects.

 In an article appearing in today’s Newsday titled “U. S. Draws Plans in Drug War” (at p 15), it was stated that: “In New York, for instance, local law enforcement officials have identified heroin smuggled from southwest Asia as the most pressing crime problem with cocaine and marijuana far behind * * * New York is the leading port of entry for southwest Asian heroin according to the DEA.”