STATE of Wisconsin, Plaintiff-Respondent,

v.

Curtis L. DIXON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 91–1092–CR. Oral argument March 3, 1993.—Decided June 24, 1993.*

(Also reported in 501 N.W.2d 442.)

462

For the defendant-appellant-petitioner there was a brief by *Wendy A. Patrickus, Gerald P. Boyle* and *Gerald P. Boyle, S.C.,* Milwaukee and oral argument by *Gerald P. Boyle.*

For the plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general with whom on the brief was *James E. Doyle,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed June 2, 1992,[1] affirming a judgment of the circuit court for Milwaukee county, Janine P. Geske, Circuit Judge.

---

[1] *State v. Dixon,* 170 Wis. 2d 342, 492 N.W.2d 187 (Ct. App. 1992),

The circuit court denied the motion to suppress the evidence of cocaine, and the defendant, Curtis L. Dixon, was convicted of possession of cocaine with the intent to deliver. The court of appeals affirmed the order denying suppression of the evidence and also affirmed the judgment of conviction.

The issue before this court is whether the defendant, who was driving the truck with the permission of the owner, is entitled to claim the protection of the Fourth Amendment to the United States Constitution. The response to this issue turns on whether the defendant had a reasonable expectation of privacy, that is an expectation of privacy in the interior of the vehicle searched that society is willing to recognize as reasonable. We conclude that under the totality of the circumstances the defendant had a reasonable expectation of privacy in the interior of the vehicle. Accordingly we reverse the decision of the court of appeals and remand the cause to the circuit court.

The facts are not disputed for purposes of this review. On January 7, 1989, the defendant was driving a Nissan Pathfinder in Milwaukee when he was stopped by an unmarked police car for failing to stop at a stop sign. The defendant was the sole occupant of the truck, owned by Perlean Bond, who had given the defendant the key to the truck so that he could wash it and replace the tires. The defendant, who owns a car wash and automotive business, had driven the vehicle with the owner's permission on other occasions before the arrest, for the purpose of doing work on it.

Upon stopping the defendant's truck the police officer pulled the patrol car alongside the truck and asked the defendant for his driver's license. When the defendant could not immediately locate the license, he obeyed the police officer's instructions to get out of the

truck. He then located his driver's license. According to the police officer's testimony, when the officer looked into the truck he saw a brick-shaped package, wrapped in newspaper, on the floor behind the front passenger seat. The police officer further testified that there was a one-to-two-inch long slit or tear in the newspaper through which he saw a plastic bag containing a white powder substance which he believed to be cocaine. Based on what he considered a "plain view" observation, the police officer seized the package from the truck.

The defendant was charged with possession of more than 30 grams of cocaine with intent to deliver, contrary to secs. 161.16(2)(b)1 and 161.41(1m)(c)3, Stats. 1990–91. The defendant moved to suppress evidence of the cocaine found in the truck. He testified that the package was not his, that he did not see the package in the vehicle, and that he did not know the package contained cocaine.

The circuit court denied the motion to suppress. While acknowledging that it was a close question, the circuit court held that the defendant had no reasonable expectation of privacy because he "did not have control over or responsibility for the vehicle other than in a very transitory way and other than that he was driving it at the time." The defendant was found guilty at the trial before the circuit court.

The court of appeals concluded that the defendant did not have a reasonable expectation of privacy in the truck because of the limited purposes of his use of the truck and the limited scope of his permission to use the truck.[2] The court of appeals concluded that the defen-

---

[2] The circuit court concluded that the stop was justified on the basis of the officer's reasonable cause to believe that a traffic law had been violated.

dant possessed authority or control over the vehicle to use it only in a manner consistent with the defendant's scope of permission to complete the agreed upon work. The defendant sought review in this court.[3]

The issue before this court is whether the defendant, who was driving the truck with the permission of the owner, is entitled to claim the protections of the Fourth Amendment. Whether the facts give rise to an individual's reasonable expectation of privacy in the

---

The circuit court also concluded that the plain view exception was not satisfied. The state has not challenged this aspect of the circuit court's decision.

Although the circuit court concluded that the search of the car and seizure of the cocaine were incident to the arrest, the state did not argue this position on appeal to the court of appeals. The court of appeals deemed this argument abandoned by the state. The state does not make this argument in its brief in this court. The state conceded at oral argument that there is no evidence that an arrest was made before the cocaine was seized.

[3] In a concurring opinion in which he cites *United States v. Lochan,* 674 F.2d 960 (1st Cir. 1982), Judge Fine concluded that the owner's grant of permission to the defendant to use her truck created a bailment and that a transitory, limited purpose bailment does not create an objective reasonable and justifiable expectation of privacy.

Relying on *Moore v. Relish,* 53 Wis. 2d 634, 639, 193 N.W.2d 691 (1972), Judge Moser's dissenting opinion concluded that a bailee has power to exercise "all possessory rights" over the vehicle, including the right to exclude all others from the possessed property, and that accordingly the defendant had a reasonable expectation of privacy. Citing numerous federal and state cases holding that a non-owner bailee with control of the vehicle with the owner's permission may challenge an allegedly illegal search, Judge Moser concluded that the defendant could challenge the reasonableness of the search of the vehicle.

space or area which was the subject of the search is a question of constitutional law which we review independently of the circuit court and court of appeals. The circuit court's findings of fact underlying the determination whether the individual has a reasonable expectation of privacy will not be set aside unless they are clearly erroneous.[4]

The primary objective of the Fourth Amendment to the United States Constitution is the protection of privacy against governmental intrusions. The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." In this case the question of whether the evidence of cocaine should have been suppressed turns on whether the defendant may assert a claim under the Fourth Amendment. The United States Supreme Court has refocused inquiry under the Fourth Amendment from traditional concepts of standing to challenge a search and seizure to an analysis of whether the disputed search and seizure has infringed on an interest of the accused which the Fourth Amendment was designed to protect. Standing is now a matter of substantive Fourth Amendment law, framed in terms of reasonable or legitimate expectation of privacy. *Rakas v. Illinois,* 439 U.S. 128, 139–40 (1981).

The United States Supreme Court has stated that "legitimation of expectations of privacy by law must

---

[4] *State v. Wisumierski,* 106 Wis. 2d 722, 733, 317 N.W.2d 484 (1982).

have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Rakas v. Illinois,* 439 U.S. 128, 144 n.12 (1981).[5] The *Rakas* court did not tell us how we are to determine the "understandings that are recognized and permitted by society." Thus the *Rakas* test does not provide "a bright line between the protected and the unprotected." *Rakas v. Illinois,* 439 U.S. at 168 (White, J. dissenting); *see also* 439 U.S. at 144–48; 439 U.S. at 152 (Powell, J., concurring).

The determination of whether an accused has a reasonable or legitimate expectation of privacy in the place invaded depends on (1) whether the individual has by his or her conduct exhibited an actual (subjective) expectation of privacy in the area searched and in the seized item, and (2) whether such an expectation is legitimate or justifiable in that it is one that society is willing to recognize as reasonable.[6] We shall focus on the objective part of the inquiry, namely, whether under the facts of the case society is willing to recognize the defendant's expectation of privacy.[7]

---

[5] While property law concepts may not determinative of the privacy interests protected by the Fourth Amendment, they are factors to be considered. *United States v. Salvucci,* 448 U.S. 83, 91–93 (1980); *Rakas v. Illinois,* 439 U.S. 128, 143, 144 n.12 (1981); *State v. Whitrock,* 161 Wis. 2d 960, 974, 468 N.W.2d 696 (1991).

[6] *State v. Milashoski,* 163 Wis. 2d 72, 85, 471 N.W.2d 42 (1991) (quoting *State v. Rewolinski,* 159 Wis. 2d 1, 13, 464 N.W.2d 401 (1990)). *See also California v. Ciraolo,* 476 U.S. 207, 211 (1986); *Smith v. Maryland,* 442 U.S. 735, 740–41 (1979).

[7] The state argues that the defendant's conduct refuted any actual subjective expectation of privacy in the package of

Our court has stated that the following factors are relevant in determining whether an accused has an expectation of privacy that society is willing to recognize as reasonable: (1) whether the accused had a property interest in the premises; (2) whether the accused is legitimately (lawfully) on the premises; (3) whether the accused had complete dominion and control and the right to exclude others; (4) whether the accused took precautions customarily taken by those seeking privacy; (5) whether the property was put to some private use; (6) whether the claim of privacy is consistent with historical notions of privacy. This list of factors is not controlling or exclusive. The totality of the circumstances is the controlling standard.[8]

The state asserts that the mere fact that a person is legitimately present in a vehicle with the permission of the owner does not necessarily mean that he or she can legitimately expect privacy in the driver and passenger areas of the vehicle. The state argues that a bailment is created when the owner of a vehicle gives another permission to operate it, and because of the various qualifications which may limit a bailee's interest in the car, the exact nature of the bailment is relevant in assessing whether the operator has a legitimate expectation of privacy in the car.

Based on this analysis the state argues that the defendant had no reasonable expectation of privacy in the truck because his permission to use the vehicle was

cocaine. The defendant denied knowing about the package, and he denied that the package was his. But the defendant is not asserting his fourth amendment rights in regard to the seized item; he is challenging the search of the interior of the truck.

[8] *State v. Fillyaw,* 104 Wis. 2d 700, 711–12 n.6, 312 N.W.2d 795 (1981).

for a limited purpose and a limited time. The majority of the court of appeals adopted this reasoning.

We must examine the totality of the circumstances to determine whether the defendant had an expectation of privacy in the interior of the truck that society is willing to recognize as reasonable. According to the record, the defendant had a property interest in the truck; he was a bailee. The owner had given him permission to drive the truck and to do repairs on it. While the defendant was in possession of the vehicle, he had the right to exclude from the vehicle any person other than the owner and those working on the vehicle. In addition, the defendant and the owner had a personal as well as a business relationship, and the defendant had had the owner's permission to drive the truck on other occasions. This relationship and prior use of the vehicle point to the defendant having an expectation of privacy in the interior of the truck that society is willing to recognize as reasonable. As Professor LaFave has written, "ordinary bailment relationships still deserve to be recognized as establishing a justified expectation of privacy upon which Fourth Amendment standing may be grounded." 4 LaFave, Search and Seizure sec. 11.3(e), p. 334 (2d ed. 1987).

■

We hold that under the totality of the circumstances the defendant had an expectation of privacy in the interior of the vehicle that society is willing to recognize as reasonable.

Our holding is supported by numerous cases involving vehicle searches. These cases conclude, as did Judge Moser's dissenting opinion in the court of appeals, that a person who borrows a car and drives it with the owner's permission has an expectation of privacy which society is willing to recognize as reasonable.

470

*See, e.g., United States v. Rubio-Rivera,* 917 F.2d 1271, 1274–75 (19th Cir. 1990) (accused who offered sufficient evidence to show he gained possession from owner has reasonable expectation of privacy); *United States v. Garcia,* 897 F.2d 1413, 1419 (7th Cir. 1990) (accused's "use of the vehicle with the owner's permission provides [the accused] with a subjective expectation of privacy that is reasonable and legitimate"); *United States v. Blanco,* 844 F.2d 344 (6th Cir. 1988) (society prepared to recognize bailee's expectation of privacy in the door panels of a rented auto); *United States v. Miller,* 821 F.2d 546, 547 (11th Cir. 1987) (accused with permission to borrow friend's car has a legitimate expectation of privacy); *United States v. Dotson,* 817 F.2d 1127, 1134–35 (5th Cir. 1987), *modified on other grounds,* 821 F.2d 1034 (5th Cir. 1987) (legitimate possessor of the car for an extended period had expectation of privacy even when he loaned the car to a friend to get the car washed); *United States v. Griffin,* 729 F.2d 475, 483 n.11 (7th Cir. 1984), cert. denied, 469 U.S. 830 (1984) (accused who borrowed a car from his brother had a protectable privacy interest in the vehicle); *United States v. Williams,* 714 F.2d 777, 779 n.1 (8th Cir. 1983) (accused who occasionally borrowed the vehicle from the owner's nephew (with owner's knowledge) and had permission from the nephew to use vehicle on the day of the search had a protectable privacy interest in the vehicle); *United States v. Posey,* 663 F.2d 37, 41 (7th Cir. 1981), cert. denied, 455 U.S. 959 (1982) (accused driving car borrowed from wife had legitimate expectation of privacy); *United States v. Portillo,* 633 F.2d 1313, 1317 (9th Cir. 1980), cert. denied, 450 U.S. 1043 (1981) (accused borrowing car from friend had legitimate expectation of privacy); *United States v. Ochs,* 595 F.2d 1247, 1253

(2d. Cir. 1979) (owner of car allowed accused to use car whenever he wished; reasonable expectation of privacy); *United States v. Tragash,* 691 F. Supp. 1066, 1070 (S.D. Ohio 1988) (driver of a rented vehicle had a subjective expectation of privacy that society is prepared to accept as reasonable); *United States v. McMichael,* 541 F. Supp. 956, 958 n.5 (D.C.Md. 1982) (accused having full use of parents' car has "standing"); *State v. Wells,* 539 So. 2d 464, 468 n.4 (Fla. 1989) (accused had protected privacy interest in borrowed car); *People v. Campbell,* 114 Misc. 2d 551, 451 N.Y.S.2d 987, 989 (1982) (accused driving truck with owner's permission and dominion over truck and cargo had legitimate expectation of privacy); *People v. Regnet,* 111 Misc. 2d 105, 443 N.Y.S.2d 642, 644 (1981) (accused driving car borrowed from wife had legitimate expectation of privacy).[9]

In fact situations distinguishable from the case at bar, several courts have held that a non-owner driver does not have a reasonable expectation of privacy in the interior of a vehicle. In one recurring fact pattern, the accused's relationship to the owner of the vehicle or to the vehicle is too attenuated to allow the court to hold that the accused has a reasonable expectation of privacy. *See, e.g., United States v. Obregon,* 748 F.2d 1371 (10th Cir. 1984) (accused driving a rented car and not named on the rental agreement; an unrelated third party, not present in the car, arranged the rental of the car; no reasonable expectation of privacy); *United States v. Erickson,* 732 F.2d 788 (10th Cir. 1984) (accused's possession of and authority to fly airplane unexplained; no reasonable expectation of privacy);

---

[9] Compare *Minnesota v. Robinson,* 458 N.W.2d 421 (Ct. App. Minn. 1990) (accused one-time user of car, transporting car to the owner; no reasonable expectation of privacy).

*United States v. Ospina,* 682 F. Supp. 1182, 1183–85 (D. Utah 1988) (accused claimed permission to drive vehicle rented by another whose surname, address and telephone number accused did not know; no reasonable expectation of privacy); *United States v. Peters,* 791 F.2d 1270, 1280–82 (7th Cir. 1986) (accused, former owner of car, and others, drove car on occasional but not regular basis, with the owner's permission; accused not in possession of car at time of search; no reasonable expectation of privacy); *Missouri v. Gollaher,* 628 S.W.2d 365 (Mo. Ct. App. 1982) (accused has no reasonable expectation of privacy when holding car under statutory lien for debt and not in possession of car at time of search); *New York v. Ayala,* 147 Misc. 2d 278, 557 N.Y.S.2d 236 (1990) (lienholder does not have reasonable expectation of privacy); *North Carolina v. Swift,* 105 N.C. App. 550, 414 S.E.2d 64, 68–69 (1992) (non-owner passenger who was to protect car from others has no reasonable expectation of privacy); *Commonwealth v. Freeman,* 195 Pa. Super. 467, 441 A.2d 1327, 1329–1330 (1982) (accused in possession of stolen car; no legitimate expectation of privacy).[10]

In another recurring fact situation, which also differs from the case at bar, the owner of the vehicle is present in the car. In these circumstances the courts have generally held that the non-owner driver does not have a legitimate expectation of privacy in the interior of the vehicle. The courts have not viewed mere driving as sufficient to establish that the vehicle's owner who was present in the vehicle transferred his possessory

---

[10] *See also State v. Wisumierski,* 106 Wis. 2d 722, 736–37, 317 N.W.2d 421 (1982), holding that the accused did not have an expectation of privacy when the owner agreed to let the accused have control of the van but had not delivered the van to the accused.

interest in the vehicle to the driver. The courts distinguish these cases from those in which an owner of a vehicle lends it to the accused thereby conveying to the accused the right enjoy a possessory interest in the vehicle in the owner's absence. *See, e.g., United States v. Jefferson,* 925 F.2d 1242 (10th Cir. 1991) (accused driving car when owner present as passenger; no personal luggage in trunk; accused did not claim interest in crack cocaine found in trunk; no reasonable expectation of privacy); *United States v. Lochan,* 674 F.2d 960 (1st Cir. 1982) (accused driving car owned by passenger; no evidence of accused's prior use of car; accused had no luggage or personal belongings in the car; accused claimed no interest in hashish seized; no reasonable expectation of privacy); *Illinois v. Flowers,* 67 Ill. Dec. 203, 444 N.E.2d 242 (Ct. App. 1982) (accused driving with owner present has no "standing").

We conclude that under the totality of the circumstances the defendant had an expectation of privacy in the interior of the vehicle that society is willing to recognize as reasonable. For the reasons set forth, we reverse the decision of the court of appeals and remand the cause to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court.

STEINMETZ, J. *(dissenting).* I would hold that Dixon did not have an expectation of privacy in Bond's truck that society is willing to recognize as reasonable. As a result, Dixon is not entitled to challenge the search of that truck on Fourth Amendment grounds.

In the trial court, the burden was on Dixon to prove that he had a reasonable expectation of privacy in

Bond's truck. *See Rakas v. Illinois,* 439 U.S. 128, 130 n.1 (1978); *State v. Callaway,* 106 Wis. 2d 503, 520, 317 N.W.2d 428 (1982), *cert. denied,* 459 U.S. 967 (1982); *State v. Rhodes,* 149 Wis. 2d 722, 724, 439 N.W.2d 630 (Ct. App. 1989). In an effort to satisfy this burden, he established the following facts.

Dixon had custody of Bond's truck only for the purpose of transporting it to his automotive business for a wash and a tire change. He was given only "one individual key," which he placed on his key ring for safekeeping. Dixon testified that he picked up cars "every other day or so" as part of his business, and he had picked up Bond's truck for servicing in the past. Dixon did not establish the number of times he had previously serviced Bond's truck.

Dixon also established that he and Bond were "dating" at the time of the search. While testifying, he referred to Bond as "a girlfriend" and "a friend of mine." However, the record does not indicate whether Bond and Dixon had a relationship akin to a marriage, or whether they were mere acquaintances in the initial stages of courtship. Indeed, Dixon's references to Bond—"a girlfriend," "friend of mine," and "dating"—suggest the latter.[1] Regardless, Dixon failed to prove that he and Bond had a relationship which was intimate enough to suggest that Dixon had implicit permission to use the truck for purposes other than performing the services specified by Bond.

---

[1] "When reviewing an order on a motion to suppress evidence, an appellate court may take into account the evidence at the trial, as well as the evidence at the suppression hearing." *State v. Griffin,* 126 Wis. 2d 183, 198, 376 N.W.2d 62 (Ct. App. 1985), *aff'd on other grounds,* 131 Wis. 2d 41, 388 N.W.2d 535 (1986), *aff'd,* 483 U.S. 868 (1987).

In brief, Dixon only established that he was a repairman driving a customer's vehicle for a limited period of time for the purpose of performing services on that vehicle which the customer requested. Therefore, the issue before us is a very narrow one. It does not involve a defendant who borrowed a vehicle from its owner for the defendant's own use; it does not involve a defendant who rented or leased a vehicle from its owner for the defendant's own use; and it does not involve a defendant who was commissioned by the owner of a vehicle to use that vehicle for a substantial period of time to perform some task for the owner.

Given this narrow fact situation, I conclude that Dixon did not have a reasonable expectation of privacy in Bond's truck. The bailment relationship between Dixon and Bond was simply too transitory and too limited in scope to create such an expectation.

The majority cites 15 cases to support its conclusion that Dixon had a reasonable expectation of privacy in Bond's truck. Majority op. at 471–472. Only one of these cases, *People v. Campbell,* 451 N.Y.S.2d 987 (1982), is somewhat analogous to the case at bar. In *Campbell,* the owner of a truck hired the defendant to drive the truck from New York to Bellemore Long Island and back again for the purpose of picking up and transporting a cargo of garments. Upon his arrival in New York with the truck and cargo, the defendant was stopped by police. The police searched the truck and determined that the garments were stolen. The defendant was subsequently charged with conspiracy and possession of stolen property.

The defendant moved to suppress the stolen merchandise. He argued, in part, that he had a reasonable expectation of privacy in the truck. To support this argument, he pointed to the fact that he kept personal

property, including an overnight bag, in the truck. The New York Supreme Court concluded that the defendant had such an expectation. *Id.* at 989–90.

*Campbell* differs from the case at bar. The defendant in *Campbell* was specifically hired for the purpose of driving the truck and transporting its cargo. Here, the defendant drove Bond's truck only as a necessary incident to servicing the truck. From a common sense standpoint, the *Campbell* arrangement partakes of a greater expectation of privacy than the arrangement between Dixon and Bond. That the defendant in *Campbell* kept personal property in the truck illustrates this fact. Accordingly, I find *Campbell* unpersuasive.

In addition, I respectfully disagree with the New York Supreme Court's holding in *Campbell*. A person hired by the owner of a truck to drive said truck and cargo for a relatively short distance does not acquire a reasonable expectation of privacy in that truck. Like the case at bar, the bailment is simply too transitory and too limited in scope to create such an expectation.

The remaining cases cited by the majority address fact situations which are much different than the fact situation at bar; therefore, these cases do not support the majority's holding. Most of the cited cases involve defendants who had unqualified permission from the vehicle owner to use the vehicle for the defendants' own purposes. *United States v. Miller,* 821 F.2d 546, 547–48 (11th Cir. 1987); *United States v. Dotson,* 817 F.2d 1127, 1134–35 (5th Cir. 1987), *modified on other grounds,* 821 F.2d 1034 (5th Cir. 1987); *United States v. Griffin,* 729 F.2d 475, 483 n.11 (7th Cir. 1984), *cert. denied,* 469 U.S. 830 (1984); *United States v. Williams,* 714 F.2d 777, 779 n.1 (8th Cir. 1983); *United States v. Posey,* 663 F.2d 37, 39–41 (7th Cir. 1981), *cert. denied,* 455 U.S. 959 (1982); *United States v. Portillo,* 633 F.2d

1313, 1317 (9th Cir. 1980), *cert. denied,* 450 U.S. 1043 (1981); *United States v. Ochs,* 595 F.2d 1247, 1252–53 (2d. Cir. 1979), *cert. denied,* 444 U.S. 955 (1979); *United States v. McMichael,* 541 F. Supp. 956, 958 n.5 (D. Md. 1982); *State v. Wells,* 539 So.2d 464, 465, 468 n.4 (Fla. 1989), *aff'd on other grounds sub nom., Florida v. Wells,* 491 U.S. 1 (1989); *People v. Regnet,* 443 N.Y.S.2d 642, 644 (1981). The scope of permission granted in these cases was much more broad than the scope of permission granted in the instant case. As explained above, Dixon merely had permission to drive Bond's truck in order to perform the service on the vehicle that Bond requested.

*United States v. Blanco,* 844 F.2d 344, 346–350 (6th Cir. 1988), *cert. denied,* 486 U.S. 1046 (1988) and *United States v. Tragash,* 691 F. Supp. 1066, 1068–70 (S.D. Ohio 1988), also cited by the majority, involved defendants who rented vehicles for their own purposes, a fact situation which is also much different than the case at bar. In these cases, the defendants purchased a property interest in the vehicles at issue which gave them an unqualified right to use the vehicles for their own purposes for a specified period of time.

The majority also cites *United States v. Garcia,* 897 F.2d 1413, 1415–18 (7th Cir. 1990). *Garcia* involved a defendant who received permission from the owner of a truck to drive the truck from Texas to Indiana. Again, the scope of permission to use the vehicle in *Garcia* was much broader than the scope of permission granted in this case. The *Garcia* defendant was to drive the owner's vehicle through several states, which would take a substantial period of time. On a trip of this length, one can expect the driver to deviate from the prescribed route for food, lodging, etc. Here, Dixon

478

only had permission to drive Bond's truck for the time needed to wash it and change its tires.

The majority also cites *United States v. Rubio-Rivera,* 917 F.2d 1271, 1273–75 (10th Cir. 1990) to support its holding. *Rivera* held that the defendant in the case had a reasonable expectation of privacy in the vehicle he was driving merely because he had permission to use the vehicle from the vehicle's owner, regardless of the nature and scope of that permission. I simply disagree with this holding. Examination of the nature and scope of a bailment is necessary to determine whether the bailee has a reasonable expectation of privacy in the bailor's property. I am in accord with the majority on this point. *See* majority op. at 469.

Finally, the majority also cites Professor LaFave to support its holding. He states that "ordinary bailment relationships still deserve to be recognized as establishing a justified expectation of privacy upon which Fourth Amendment standing may be grounded." 4 Wayne R. LaFave, *Search and Seizure* sec. 11.3(e) at 334 (2d ed. 1987). However, the cases cited by LaFave in support of this proposition can be distinguished on the same grounds as the cases cited by the majority. *Id.* at 334 n.239 (2d ed. 1989 & Supp. 1993). Therefore, Professor LaFave's pronouncement does not apply to the fact situation here.

For the foregoing reasons, I dissent.

I am authorized to state that Justice JON P. WILCOX joins this dissenting opinion.