**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Brian Paul JOHNSON,**
**Defendant–Appellant.**

**No. 89–2002.**

United States Court of Appeals,
Tenth Circuit.

Feb. 1, 1990.

Presiliano A. Torrez, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., with him on the brief), Albuquerque, N.M., for plaintiff-appellee.

Charles Louis Roberts (Robert Ramos and Gary Hills with him on the brief), El Paso, Tex., for defendant-appellant.

Before ANDERSON and BARRETT, Circuit Judges, and THEIS *, District Judge.

BARRETT, Senior Circuit Judge.

Brian Paul Johnson (Johnson) appeals from an order of the district court denying his motion to suppress marijuana seized at a Border Patrol checkpoint from an automobile he was driving.

Johnson was indicted and charged with possession with the intent to distribute a quantity of marijuana in violation of 21 U.S.C. § 841(a)(1). Thereafter, Johnson filed a motion to suppress arguing that the Border Patrol agents lacked probable cause and/or consent to search the vehicle that he was driving and that, as such, the marijuana seized as a result of the search was inadmissible.

During the suppression hearing, Border Patrol Agents Suarez and Velasco testified on behalf of the United States. Johnson testified on his own behalf.

Agent Suarez testified, *inter alia*, that: he worked at the Las Cruces, New Mexico, Border Patrol checkpoint on Interstate 10 West located approximately 20 miles west of Las Cruces; that Johnson, driving a 1987 Fiero, accompanied by Bobby Russell, arrived at the checkpoint at approximately 11:35 p.m.; when a car pulls into the checkpoint, he questions the occupants of the vehicle as to their citizenship; when asked, both Johnson and Russell claimed to be citizens of the United States; while questioning Russell and Johnson, he detected the smell of alcohol; based on his past experience, he did not believe that Johnson's and Russell's appearances were consistent with the vehicle; suspecting that the vehicle might be stolen, he questioned Russell as to the ownership of the vehicle; the majority of people stopped at the checkpoint produce a vehicle registration; after neither Johnson nor Russell were able to produce a registration form (although Johnson did produce an insurance form), he directed the vehicle to "secondary inspection" very close by for further investigation as to the ownership of the vehicle; after the vehicle was at the secondary inspection point, Johnson became verbal; Russell stepped out of the car when Agent Velasco walked up to the car; when Russell got out of the vehicle, Agent Valasco noticed what appeared to be a marijuana cigarette in plain view; and he verified that the cigarette was marijuana.

On cross-examination, Agent Suarez testified that: when he asked Johnson and Russell about their citizenship, Johnson answered that they were both United States citizens; neither Johnson nor Russell appeared to be foreign or alien; based on his

---

* The Honorable Frank G. Theis, Senior Judge, United States District Court for the District of Kansas, sitting by designation.

past experience and the inability of Johnson or Russell to produce a vehicle registration form, they were sent to secondary inspection; in about 95% of the cases, the cars he had suspected of being stolen were actually stolen; not every vehicle going through the checkpoint is questioned as to ownership; there are people dressed like Johnson and Russell passing through the checkpoint on legitimate travel; he would detain a vehicle if he believed that a violation had been committed in his presence or that the vehicle might be stolen; the insurance form produced by Johnson appeared to be proper; Johnson told him that the car belonged to his girlfriend and that she had loaned it to him; and he did not personally observe Agent Velasco find the marijuana cigarette inside the vehicle.

Agent Valesco testified that: he encountered Johnson as he walked to the secondary inspection; Johnson was extremely loud and too close to Agent Suarez for comfort; Russell got out of the car without being asked; after Russell exited the car, he saw what appeared to be a large marijuana cigarette on the seat; and the vehicle was searched after "we" confirmed that it was a marijuana cigarette.

On cross-examination, Agent Valesco testified that: as he approached Agent Suarez and Johnson, Johnson stepped back a little; Russell got out of the car when he walked up to the passenger door; when Russell got out, Valesco saw what appeared to him to be a marijuana cigarette; after seeing the marijuana cigarette, he advised both Johnson and Russell to step inside the trailer; and, during his investigation, he determined that both Johnson and Russell were United States citizens.

Johnson testified that: when Agent Suarez asked about their citizenship, he and Russell replied that they were United States citizens; he produced a valid California driver's license after Agent Suarez asked for his identification; Agent Suarez pulled them over to secondary after Russell could not produce any identification; once in secondary "the agent" asked for the registration for the car; because there was a lien on the car, all he could produce was

an insurance statement; the car belonged to his girlfriend and he had permission to drive it; he never gave the agents permission to search the car; and, when Agent Suarez asked if it was okay to search the car, he said no.

On cross-examination, Johnson testified that he and Russell had not been drinking and that as far as he knew there was never a marijuana cigarette in the car.

Following the hearing, the district court entered an order denying Johnson's motion to suppress. The court found that there was "sufficient evidence to support a reasonable suspicion of criminal activity to justify a secondary stop" and "sufficient evidence of probable cause to search the vehicle based on the marijuana cigarette observed in plain view during the secondary stop." (R., Vol. I at p. 11).

Johnson subsequently entered a conditional guilty plea reserving the right to seek appellate review of the district court's denial of his motion to suppress. On appeal, Johnson contends that the trial court erred in (1) failing to suppress the evidence because the seizure of Johnson and his vehicle violated the fourth amendment, and (2) failing to suppress the evidence because the duration and scope of his detention and that of his vehicle exceeded the constitutional limits applicable to checkpoints.

I.

Johnson contends that the trial court erred in failing to suppress the evidence "because the seizure of the defendant and his vehicle" violated the Fourth Amendment. Johnson quotes from *United States v. Martinez–Fuerte*, 428 U.S. 543, 557–58, 567, 96 S.Ct. 3074, 3082–83, 3096, 49 L.Ed.2d 1116 (1976) for the propositions that: routine checkpoint stops involve only a brief detention of travelers during which all that is required of the vehicle's occupants is a response to a question or two and possibly the production of a document evidencing a right to be in the United States; neither the vehicle nor its occupants are to be searched and visual inspection of the vehicle is limited to what can be seen without a search; and, checkpoint

searches are constitutional only if justified by consent or probable cause to search. Specifically, counsel for Johnson contended at oral argument that Customs agents are authorized only to make limited inquiries at checkpoint stops relative to citizenship and that they are not authorized to inquire about the ownership of a vehicle which is driven into the checkpoint. We reject this contention.

The government responds that the denial of a motion to suppress must be upheld unless clearly erroneous and that the evidence must be viewed in the light most favorable to the government. *See United States v. Cooper*, 733 F.2d 1360, 1364 (10th Cir.), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984); *United States v. Obregon*, 748 F.2d 1371, 1376 (10th Cir. 1984).

■ Border agents may question occupants of a vehicle concerning their citizenship and to explain suspicious behavior. In *United States v. Espinosa*, 782 F.2d 888, 891 (10th Cir.1986), we held:

Defendant was detained at a secondary inspection area of a permanent Border Patrol checkpoint....

\* \* \* \* \* \*

The border agent may question the driver and passengers about their citizenship and immigration status, and ask them to explain suspicious circumstances....

\* \* \* \* \* \*

The Fourth Amendment does not require police officers to close their eyes to suspicious circumstances.... As the Supreme Court stated in *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972), quoted with approval in *Hayes v. Florida*, [470] U.S. [811] [817] 105 S.Ct. 1643, 1647, 84 L.Ed.2d 705, 710 (1985), in addressing the reach of a *Terry* [*v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)] stop:

[a] brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

However, detention and search beyond a routine Customs inspection may be undertaken only upon "a 'reasonable suspicion' standard justified by a particularized and objective basis for suspecting the particular person of [a crime]." *United States v. Carreon*, 872 F.2d 1436, 1440 (10th Cir. 1989), *citing United States v. Montoya de Hernandez*, 473 U.S. 531, 541, 105 S.Ct. 3304, 3310, 87 L.Ed.2d 381 (1985).

In *United States v. Sokolow*, —— U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989), the Court opined:

The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.' [*Illinois v.* ] *Gates, supra* [462 U.S. 213] at 232 [103 S.Ct. 2317 at 2332, 76 L.Ed.2d 527 (1983) ] We think the Court of Appeals' effort to refine and elaborate the requirements of 'reasonable suspicion' in this case create unnecessary difficulty in dealing with one of the relatively simply concepts embodied in the Fourth Amendment. In evaluating the validity of a stop such as this, we must consider 'the totality of the circumstances—the whole picture.' *United States v. Cortez*, 449 U.S. 411, 417 [101 S.Ct. 690, 695, 66 L.Ed.2d 621] (1981). 109 S.Ct. at 1585.

The government points out that Agent Suarez properly directed the car to secondary inspection because he believed the car was stolen after Johnson was unable to produce a registration form; the car was searched only after the discovery of the marijuana cigarette in plain view; Border Patrol agents may question the occupants of a car about their citizenship, immigration status, and to explain suspicious circumstances; that in view of Johnson's unkempt appearance, the odor of alcohol, and his inability to produce a registration, Agent Suarez had reasonable suspicion to direct Johnson to secondary; and, under all of these circumstances, the district court's denial of Johnson's motion to suppress was not clearly erroneous.

21 U.S.C. § 952 provides, *inter alia*, that it is unlawful for any person to import into the customs territory of the United States

from any place outside thereof, or to import into the United States from any place outside thereof, any controlled substance identified in various schedules. The court in *United States v. Doyal*, 437 F.2d 271 (5th Cir.1971) observed that the purpose of this act was to eliminate all traffic in narcotics in the United States, except for legitimate medical purposes, by preventing uncontrolled drug importation.

21 U.S.C. § 841(a)(1) provides, *inter alia,* that it is unlawful for any person knowingly or intentionally to possess with intent to distribute a controlled substance. This court upheld the actions of Customs officers who monitored by radar and in-flight tracking a plane observed heading north in a drug smuggling corridor in New Mexico under highly suspicious circumstances. The plane was ultimately searched, without a search warrant, after it landed at Durango, Colorado. We observed that Customs Officer Haran had investigated more than 200 smuggling cases, 95 percent of which had proven to be drug smuggling flights. We there affirmed appellant Smith's convictions on charges of possession with intent to distribute marijuana under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), importation of marijuana in violation of 21 U.S.C. §§ 952(a) and 960(a) and (b)(2), and smuggling goods into the United States in violation of 18 U.S.C. § 545. *United States v. Smith,* 797 F.2d 836 (10th Cir.1986).

In *United States v. Medina–Flores,* 477 F.2d 225 (10th Cir.1973), we held that Customs officials who had probable cause to believe that the subject vehicle carried narcotics imported in violation of law were not limited to investigate solely for the presence of illegal aliens, citing to *United States v. McCormick,* 468 F.2d 68 (10th Cir.), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1972), *United States v. Anderson,* 468 F.2d 1280 (10th Cir.1972), and 19 U.S.C. § 482.

In *United States v. McCormick, supra,* we held that immigration officers and United States Customs agents are not limited to investigate solely for the presence of illegal aliens. We specifically pointed to 21 U.S.C. § 960(a) which relates to the importation of

narcotic drugs into the United States and 49 U.S.C. App. §§ 781, 782 and 787 where marijuana is defined as a narcotic drug, constituting a "contraband article" subject to seizure and forfeiture.

In *United States v. Anderson, supra,* we held that where border patrol agents stopped a vehicle at a checkpoint to search for aliens and the officers noticed the odor of marijuana and saw an expended marijuana cigarette in an ashtray, the officers had probable cause to search the vehicle without a search warrant. The checkpoint in *Anderson* was 98 air miles from the Mexican border. Conviction was had under 21 U.S.C. § 841(a)(1).

In our case, Agent Suarez testified that he directed Johnson to the secondary inspection site based on his past experience and his belief that the car might be stolen because of Johnson's failure to produce a registration. Johnson testified:

Q. [Defense Counsel] What did he say to you, if anything, as you drove up?
A. [Mr. Johnson] Drove up. We slowed down to the booth there and he asked us our citizenship. I replied, I believe, U.S. or American and the passenger did, also.
Q. What is the next thing that happened?
A. The next thing that happened was, Agent Suarez asked me for my identification and which I produced a California driver's license.

\*   \*   \*   \*   \*   \*

Q. Did he ask you at that point to pull over to secondary?
A. No. He then asked Mr. Russell to pull over to secondary—I mean—I'm sorry. He then asked Mr. Russell if he had any identification and Mr. Russell replied he did not.
Q. Did Agent Suarez ask you, before you went to secondary, about documents concerning the ownership of the vehicle?
A. *No. He pulled us over to secondary after Mr. Russell could not produce any identification.* (emphasis supplied).
(R., Vol. II at pp. 39–40).

We must consider the evidence addressed at a suppression hearing in the light most favorable to the prevailing par-

ty. *United States v. Carreon, supra,* p. 1441, *citing United States v. Gay,* 774 F.2d 368 (10th Cir.1985). Here, Agent Suarez testified that he directed the vehicle to secondary inspection after he had detected the odor of alcohol, his belief based on his past experience that Johnson's and Russell's appearance was not consistent with the car, and Johnson's failure to produce a registration form for the car.

After Johnson failed to produce a registration form, Agent Suarez had a reasonable suspicion under *United States v. Carreon, supra,* to direct Johnson to secondary inspection to verify the ownership of the car. The Fourth Amendment does not require police officers to close their eyes to suspicious behavior. *United States v. Espinosa, supra.*

Furthermore, Agent Suarez properly directed the car to secondary inspection after Russell failed to produce any identification. *United States v. Martinez–Fuerte, supra,* (upholds the validity of a "brief detention of travelers" at checkpoints for "a response to a brief question or two and possibly the production of a document evidencing a right to be in the United States." 428 U.S. at 558, 96 S.Ct. at 3083, *quoting United States v. Brignoni–Ponce,* 422 U.S. 873, 880, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975)).

Johnson and Russell were properly directed to the secondary inspection after Russell could not produce any identification and after they failed to produce a registration form. Once there, the search of the vehicle, predicated upon Agent Valesco's observation of a large marijuana cigarette in plain view inside the car, was valid.

We hold that the search was not in violation of Johnson's Fourth Amendment rights and that the district court did not err in denying Johnson's motion to suppress.

## II.

Johnson contends that the scope and duration of the instant stop and detention exceeded the limitations placed on such stops and detentions by *United States v. Martinez–Fuerte.*

Johnson argues that under *United States v. Martinez–Fuerte* the Border Pa-

trol agents had only the right to ask citizenship questions and to make a visual search; that any further detention and/or search required probable cause; that the continued detention in this case violated *United States v. Martinez–Fuerte* inasmuch as it was for the single purpose of determining whether the vehicle was stolen; that the probable cause utilized to authorize the search of the vehicle (marijuana cigarette in plain view) arose as a direct result of the illegal, continued detention; and that the exclusionary rule required suppression of all the evidence which flowed from the illegal, continued detention and search and seizure of appellant (Johnson) and his vehicle.

 Assuming *arguendo* that Agent Suarez did not have reasonable suspicion to direct the car to secondary inspection for further investigation to verify the ownership of the vehicle, still Agent Suarez acted properly in directing the car to secondary inspection after Russell failed to produce any identification. Johnson testified that the car was directed to secondary inspection after Russell failed to produce any identification.

AFFIRMED.