**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ramon RUBIO–RIVERA,**
**Defendant–Appellant.**

**No. 89–2302.**

United States Court of Appeals,
Tenth Circuit.

Oct. 26, 1990.

---

**1273**

David N. Williams, Asst. U.S. Atty., Rhonda P. Backinoff, Asst. U.S. Atty. and William L. Lutz, U.S. Atty., on brief, Albuquerque, N.M., for plaintiff-appellee.

William D. Fry, Asst. Federal Public Defender, Las Cruces, N.M., for defendant-appellant.

Before TACHA and BALDOCK, Circuit Judges, and CHRISTENSEN *, District Judge.

BALDOCK, Circuit Judge.

Defendant-appellant Ramon Rubio–Rivera appeals from a judgment of conviction on one count of possession with intent to distribute less than fifty kilograms of marijuana. 21 U.S.C. § 841(a)(1), 841(b)(1)(D). Defendant's motion to suppress forty-four pounds of marijuana was denied by the district court and he was convicted after a jury trial. Sentenced to prison for twenty-five months and supervised release for three years thereafter, defendant appeals challenging the denial of his motion to suppress. Our jurisdiction arises under 28 U.S.C. § 1291 and we affirm.

I.

On June 3, 1989, at 8:20 p.m., defendant drove a 1978 Ford LTD into the border patrol checkpoint north of Las Cruces, New Mexico. At the primary checkpoint, the border patrol agent inquired about defendant's citizenship. The defendant handed the agent a temporary resident alien card, which the agent thought to be valid. The agent testified that during this time the defendant failed to make eye contact and defendant's hand was shaking. The agent began questioning the defendant about where the defendant came from. Defendant explained that he was returning from Juarez, Mexico, where he had spent five days with friends. No luggage or personal belongings were visible. Ownership of the car was discussed. The agent became suspicious when the defendant claimed that

---

* The Honorable A. Sherman Christensen, Senior United States District Judge for the District of Utah, sitting by designation.

the car had been purchased in El Paso two days earlier by a friend. The car had a temporary sticker from Colorado affixed to the rear window. On the floor on the back seat of the car was a one-gallon plastic milk jug partially filled with gas. The agent viewed this as consistent with a reduced capacity gas tank. According to the agent, such specially fabricated gas tanks frequently contain two compartments, one for gas and another for concealing contraband.

The agent asked the defendant about the contents of the trunk. Defendant got out of the car and opened the trunk which was empty. While the agent conducted his inquiry, traffic was backing up on I-25, the highway on which the border checkpoint is located. After closing the trunk lid, the agent told the defendant to pull over into the secondary checkpoint. While a National Crime Information Center (NCIC) check was made on the vehicle, defendant consented to a search of the vehicle. The agent discovered a gas tank with a concealed compartment containing marijuana.

## II.

Defendant contends that directing defendant to the secondary checkpoint exceeded the legitimate scope of the initial stop and violated the fourth amendment. According to the defendant, he was directed to that checkpoint in the absence of a reasonable suspicion that a crime had been committed in violation of the fourth amendment. Though the subsequent search was undertaken with his consent, defendant argues that search was tainted by the constitutional violation and the product of the search must be suppressed as fruit of the poisonous tree. *See Wong Sun v. United States*, 371 U.S. 471, 484–88, 83 S.Ct. 407, 415–17, 9 L.Ed.2d 441 (1963).

■ In the district court, the government argued that defendant lacked standing to challenge the search of the car. Rec. vol. I, doc. 11 at 2, vol. III at 8. At the suppression hearing, defendant testified that he came into possession of the car after he met one Alesandro–Castro in a Juarez bar. *Id.* vol. III at 12–14. Defen-

dant had never met Alesandro–Castro previously, but agreed to transport the car to the United States because Alesandro–Castro lacked immigration documents. *Id.* at 14–15. Defendant did not obtain Alesandro–Castro's first name, address or telephone number and no arrangements were made for the car's return or delivery to another person. *Id.* at 15–16. Defendant also testified that he attempted to buy the car, but that Alesandro–Castro told him that he should just take the car and see if he liked it. *Id.* at 15. The district judge rejected the defendant's contention that the car was a gift, *id.* at 41, but did not decide the standing issue. At trial, the defendant disclaimed any knowledge or interest in the marijuana.

■ Given the personal nature of interest protected, standing is a matter of substantive fourth amendment law. *Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). A defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated. *United States v. Boruff*, 909 F.2d 111, 115 (5th Cir.1990). Standing is not conferred vicariously; even if the fourth amendment rights of a third party have been violated, a district court may not suppress evidence unless the defendant has met his burden of proving that the challenged search or seizure infringed on his personal fourth amendment interests. *United States v. Erwin*, 875 F.2d 268, 270 (10th Cir.1989). Standing is analyzed based upon two factors: "whether the individual, by his conduct has 'exhibited an actual (subjective) expectation of privacy,'" and "whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable."'" *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (quoting *Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)); *United States v. Arango*, 912 F.2d 441, 445 (10th Cir.1990); *Erwin*, 875 F.2d at 270. When the facts are uncontroverted, we review the standing issue *de novo*.

*United States v. Kuespert,* 773 F.2d 1066, 1067 (9th Cir.1985). When the facts are controverted, the factual findings are reviewed under the clearly erroneous standard, but legal issues are reviewed *de novo.*

Here, the district court found that the car was not a gift to the defendant, but did not make further findings on the standing issue. We need not remand this case for further findings, however, because the legally operative facts on the standing issue are uncontroverted. Defendant testified that Alesandro–Castro, the apparent owner of the car, loaned him the vehicle. He later testified that Alesandro–Castro directed him to papers in the glove box indicating ownership. Rec. vol. IV at 134. Thus, this case is unlike *Erwin* and *Arango* in which the defendants lacked standing because they "failed to introduce any evidence to show legitimate ownership or possession of the automobile, which might establish a legitimate expectation of privacy in the particular area searched." *Erwin,* 875 F.2d at 271; *Arango,* 912 F.2d at 446 n. 2.

▮ The standing inquiry focuses on reasonable expectations, hence, a defendant is not required "to produce legal documentation showing a chain of lawful custody from the registered owner" to himself. *Arango,* 912 F.2d at 446 n. 2. Defendant satisfied the requirement that he "must at least state that he gained possession from the owner or someone with the authority to grant possession." *Id.* at 445. Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle. *United States v. Garcia,* 897 F.2d 1413, 1418 (7th Cir.1990) (where defendant claimed to have borrowed truck under vague arrangement, he had standing given that government failed to disprove that the truck "was not being used with the permission of the owner"); *United States v. Miller,* 821 F.2d 546, 548–49 (11th Cir.1987) (defendant had standing to challenge search of car borrowed from a friend); *United States v. Portillo,* 633 F.2d 1313, 1317 (9th Cir.1980) (same), *cert. denied,* 450 U.S. 1043, 101 S.Ct. 1763, 1764, 68 L.Ed.2d 241 (1981); *see also United States v. Rose,* 731 F.2d 1337, 1343 (8th Cir.) (same, car borrowed from sister), *cert. denied,* 469 U.S. 931, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984); *United States v. Griffin,* 729 F.2d 475, 483 (7th Cir.) (same, car borrowed from brother), *cert. denied,* 469 U.S. 830, 105 S.Ct. 117, 83 L.Ed.2d 60 (1984); *United States v. Williams,* 714 F.2d 777, 779 n. 2 (8th Cir.1983) (same, car borrowed from nephew's girlfriend); *United States v. Posey,* 663 F.2d 37, 40–41 (7th Cir.1981) (same, car borrowed from wife), *cert. denied,* 455 U.S. 959, 102 S.Ct. 1473, 71 L.Ed.2d 679 (1982).

## III.

▮ Defendant contends that once the agent was satisfied that his immigration card was valid, defendant should have been released rather than required to proceed to the secondary checkpoint. *Cf. United States v. Guzman,* 864 F.2d 1512, 1519 (10th Cir.1988); *United States v. Gonzalez,* 763 F.2d 1127, 1131–32 (10th Cir. 1985); *United States v. Recalde,* 761 F.2d 1448, 1455 (10th Cir.1985). Application of the fourth amendment in this context requires a balancing between the government's interest in monitoring its borders and the level of intrusiveness occasioned by a primary and secondary checkpoint stop. *Michigan v. Sitz,* ⸻ U.S. ⸻, 110 S.Ct. 2481, 2486, 110 L.Ed.2d 412 (1990). That balance was struck as a matter of law in *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), which held that no individualized suspicion is necessary to stop, question, and then selectively refer motorists to a secondary immigration checkpoint. *Id.* at 562–63, 96 S.Ct. at 3085. Border patrol agents have "virtually unlimited discretion to refer cars to the secondary inspection area." *INS v. Delgado,* 466 U.S. 210, 221, 224 n. 6, 104 S.Ct. 1758, 1764, 1767 n. 6, 80 L.Ed.2d 247 (1986) (Powell, J. concurring). On similar facts, the Fifth Circuit has held that border patrol agents need no probable cause or reasonable suspicion to stop, question and selectively refer motorists to a

secondary checkpoint. *United States v. Price*, 869 F.2d 801, 802–03 (5th Cir.1989) (concealed compartment containing cocaine); *United States v. Garcia*, 616 F.2d 210, 211–12 (5th Cir.1980) (concealed compartment containing marijuana).

The rationale of *Martinez–Fuerte* is grounded in the government's legitimate concerns about citizenship and immigration status of those entering into the United States and the detection of unlawful entry. *Martinez–Fuerte*, 428 U.S. at 545, 557, 96 S.Ct. at 3077, 3082; *see also National Treasury Employees Union v. Von Raab*, 489 U.S. 656, ——, 109 S.Ct. 1384, 1392, 103 L.Ed.2d 685 (1989) (discussing *Martinez–Fuerte* ); *United States v. Villamonte–Marquez*, 462 U.S. 579, 587, 103 S.Ct. 2573, 2579, 77 L.Ed.2d 22 (1983) (same); *Delaware v. Prouse*, 440 U.S. 648, 655–56, 99 S.Ct. 1391, 1397, 59 L.Ed.2d 660 (1978) (same); *United States v. Brignoni–Ponce*, 422 U.S. 873, 883–84, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975) (precursor of *Martinez–Fuerte* ). Notwithstanding, we have held that border patrol agents may "question individuals regarding suspicious circumstances, in addition to citizenship matters, when those individuals are stopped at a permanent checkpoint." *United States v. Benitez*, 899 F.2d 995, 998 (10th Cir.1990). In *United States v. Espinosa*, 782 F.2d 888 (10th Cir.1986), we stated:

> The border agent may question the driver and passengers about their citizenship and immigration status, and ask them to explain suspicious circumstances. Any further detention must be based on consent or probable cause. *United States v. Brignoni–Ponce*, 422 U.S. 873, 881–82, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975).

*Id.* at 891. Thus, even when the questions asked at the primary checkpoint allay all concerns about citizenship and immigration status, an agent still may direct a vehicle to a secondary checkpoint and further question the occupants on the basis of reasonable suspicion that a crime has been committed. *United States v. Johnson*, 895 F.2d 693, 696, 698 (10th Cir.1990). Border

patrol agents are not required to ignore suspicious circumstances, even if such circumstances may not be pertinent to citizenship and immigration status. *Johnson*, 895 F.2d at 696; *Espinosa*, 782 F.2d at 891. Given " 'the veritable national crisis in law enforcement caused by smuggling of illicit narcotics,' " *Von Raab*, 489 U.S. at ——, 109 S.Ct. at 1392 (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 538, 105 S.Ct. 3304, 3309, 87 L.Ed.2d 381 (1985), border patrol agents, within constitutional limits, may assist in defeating "the traffickers seemingly inexhaustable repertoire of deceptive practices and elaborate schemes for importing narcotics." *Von Raab*, 489 U.S. at ——, 109 S.Ct. at 1392.

Merely because the agent was satisfied that defendant had a valid immigration card, however, does not mean that the agent required reasonable suspicion to have defendant proceed to the secondary checkpoint. The agent ran an NCIC check on the vehicle at the secondary checkpoint, rather than letting traffic back up at the primary checkpoint. To the extent that the agent had not resolved all immigration concerns about the defendant and the vehicle, the agent did not require reasonable suspicion to complete his normal inquiry under these circumstances, including the NCIC check, at the secondary checkpoint. *Martinez–Fuerte*, 428 U.S. at 563, 96 S.Ct. at 3085; *Johnson*, 895 F.2d at 698.

In any event, the referral to the secondary checkpoint is acceptable under the standards applicable to investigative detentions. Under the fourth amendment, a valid investigative detention may occur when "specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime." *Espinosa*, 782 F.2d at 890 (relying on *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). In deciding the validity of an investigative detention, we take a common-sense approach based upon ordinary human experience. *United States v. Walraven*, 892 F.2d 972, 975 (10th Cir. 1989).

The district court determined that referral to the secondary checkpoint was reasonable given the circumstances. At the primary checkpoint, the defendant was apprehensive and would not establish eye contact when questioned. Although the defendant indicated that he had been on a trip for several days, the car contained no luggage or personal belongings. The car had a temporary Colorado sticker, yet defendant claimed that the car had been purchased in El Paso. Finally, the car had a container of gas on the rear floor which the agent testified was consistent with a concealed compartment. These facts, together with their reasonable inferences in light of the agent's experience concerning unlawful immigration and drug interdiction, *see Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883, support a reasonable suspicion that the defendant was transporting contraband.

Because we hold that the referral to the secondary checkpoint did not violate the fourth amendment, we need not address the defendant's argument that his consent to search the vehicle was tainted by an earlier fourth amendment violation. Defendant did not challenge the voluntariness of his consent on other grounds and when valid consent is obtained, the fourth amendment is not violated, *United States v. Bell*, 892 F.2d 959, 965 (10th Cir.1989), *cert. denied* —— U.S. ——, 110 S.Ct. 2618, 110 L.Ed.2d 639 (1990).

AFFIRMED.