986 F.2d 1431
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne David SIMMS, Defendant-Appellant.
 No. 92-2090.
 United States Court of Appeals, Tenth Circuit.
 Jan. 28, 1993.
 
 Before JOHN P. MOORE, BRORBY and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Defendant Wayne David Simms appeals his conviction for possession with intent to distribute marijuana, raising the following issues: (a) whether the district court erred in concluding his referral to the secondary inspection area of a permanent border patrol checkpoint did not violate the Fourth Amendment; (b) whether the court erred in admitting prior conviction evidence under Fed.R.Evid. 404(b); (c) whether the court committed plain error in not providing a limiting instruction regarding the jury's use of his prior conviction; and (d) whether the court erred in denying his request for a downward departure. We affirm.
 
 
 2
 While driving into a permanent border patrol checkpoint near Alamogordo, New Mexico, defendant encountered U.S. Border Patrol Agent Eligio Pena at the primary inspection area. On initial contact with defendant's van, Agent Pena smelled the "overwhelming" odor of "rotten fruit" and immediately became suspicious that the odor might be masking the smell of contraband. He asked defendant if the van contained an air freshener. Defendant replied, "Yeah, I'm not sure, but the van has just been cleaned." After walking around the van and observing no luggage, Agent Pena asked defendant where he was going. Defendant said he was traveling to Alamogordo to pick up a friend before checking into the Veterans Administration Hospital in Big Spring, Texas. Agent Pena requested permission to search the van with a "sniffer dog," and defendant responded, "Sure, go ahead."[1] Agent Pena then referred the van to the secondary inspection area. A dog search was conducted and the dog alerted. Defendant was advised of his rights and asked to sign a consent to search form. After defendant signed the form, agents searched the van and recovered approximately 143 pounds of marijuana.
 
 
 3
 Defendant was indicted on one count of possession with intent to distribute more than 50 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). He entered a not-guilty plea and filed a motion to suppress the marijuana seized by border patrol agents. At the suppression hearing, Agent Pena testified for the government while defendant presented no testimony. Defendant's motion was denied, and the case proceeded to trial. Defendant was found guilty and sentenced to fifty-one months' imprisonment followed by three years' supervised release.
 
 
 4
 Mr. Simms challenges the district court's conclusions that reasonable suspicion is not required for referral to a secondary inspection area and, alternately, that Agent Pena nonetheless had reasonable suspicion to make the referral. First, defendant contends the court "incorrectly held that a referral to the secondary for non-immigration concerns did not require reasonable suspicion." Though defendant concedes referral for further immigration-related questioning absent reasonable suspicion is justified as "an extension of the initial stop at the primary," he argues that an agent must have reasonable suspicion before making a referral if all concerns about immigration status and citizenship have been allayed. Defendant maintains that because he was "an American citizen driving a car with Texas registration," Agent Pena "had no suspicions" that he was violating any immigration laws. Therefore, defendant claims his referral to the secondary for drug-related reasons was constitutionally permissible only if supported by reasonable suspicion.
 
 
 5
 "In reviewing a denial of a motion to suppress, the trial court's finding of fact must be accepted by this court unless clearly erroneous." United States v. Lopez, 777 F.2d 543, 548 (10th Cir.1985) (citation omitted). Moreover, "[w]e must consider the evidence addressed at a suppression hearing in the light most favorable to the prevailing party." United States v. Johnson, 895 F.2d 693, 697-98 (10th Cir.1990) (citations omitted). The ultimate determination of reasonableness under the Fourth Amendment, however, is a conclusion of law which we review de novo. United States v. Butler, 904 F.2d 1482, 1484 (10th Cir.1990) (citations omitted).
 
 
 6
 The district court denied defendant's motion to suppress because "questioning and referral of [a] motorist to a secondary inspection [area] are permissible under the Fourth Amendment even in the absence of any individualized suspicion, much less probable cause."[2] The court also determined that defendant's referral was justified in any case because Agent Pena had reasonable suspicion to believe defendant was engaged in drug smuggling based on his "seven years' " experience as a border patrol agent, the intense "rotten fruit smell" emanating from defendant's van, and the absence of luggage.
 
 
 7
 It is well established in this Circuit that "[n]o individualized suspicion is necessary to stop, question and then selectively refer motorists to a secondary inspection checkpoint." United States v. Sanders, 937 F.2d 1495, 1499 (10th Cir.1991), cert. denied, 112 S.Ct. 1213 (1992) (citations omitted). See also United States v. Benitez, 899 F.2d 995, 997 (10th Cir.1990) ("[A] vehicle may be stopped and its occupants may be questioned briefly, even if there is no reason to believe the particular vehicle contains illegal aliens."); United States v. Espinosa, 782 F.2d 888, 891 (10th Cir.1986) ("The border agent may question the driver and passengers about their citizenship and immigration status, and ask them to explain suspicious circumstances.") (emphasis added); Johnson, 895 F.2d at 696 (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)) (citations omitted) ("A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.").
 
 
 8
 Moreover, "[d]etention and questioning at borders based only on suspicious circumstances are approved as consistent with the accepted government policy of ensuring that ... no one is permitted to secrete contraband through the border." Sanders, 937 F.2d at 1500. Indeed, border patrol agents may question motorists about suspected drug activity because such questioning "bears a reasonable relationship to their unique duties." Id. Contrary to defendant's assertions, "[b]order patrol agents are not required to ignore suspicious circumstances, even if such circumstances may not be pertinent to citizenship and immigration status." United States v. Rubio-Rivera, 917 F.2d 1271, 1276 (10th Cir.1990) (citations omitted). Therefore, the district court correctly concluded Agent Pena did not need reasonable suspicion to refer defendant to the secondary inspection area. Although we agree with the district court's conclusion that Agent Pena had reasonable suspicion, our resolution of the first issue renders the second moot.
 
 
 9
 In his opening statement at trial, defense counsel asserted that Mr. Simms did not know the van contained marijuana. The government subsequently sought to admit evidence of defendant's 1989 Texas felony conviction for cocaine possession to rebut defendant's anticipated defense that he was unaware of the marijuana. The court initially rejected the government's proffer, suggesting the conviction would be admissible under Fed.R.Evid. 609 to impeach defendant if he testified. During a bench conference preceding the defense's case presentation, the court asked defense counsel who his witnesses were. Defense counsel noted he would be calling two witnesses and "possibly Mr. Simms." The court then reconsidered its previous ruling denying admission of defendant's prior conviction and concluded the evidence was admissible under Fed.R.Evid. 404(b) to rebut defense counsel's remarks concerning defendant's alleged ignorance of the marijuana. Specifically, the court told the prosecution, "I'm going to allow you to go under 404(b), because [defense] counsel ... in opening statement ... in essence, testified on behalf of his client that he didn't know anything about [the marijuana in the van]. So you can go into that." Defense counsel objected to the ruling, and defendant later testified on his own behalf.
 
 
 10
 On appeal, defendant claims the district court abused its discretion in admitting the evidence because "[t]he relevancy of evidence cannot be based on argument of counsel during opening statement since those statements provide no evidentiary basis to justify admission." Defendant further contends he was "clearly prejudiced" by the admission of the evidence because he was "forced" into the "tactical position" of "having to testify in order to rebut the implications raised by the prior conviction."
 
 
 11
 "A trial court's evidentiary rulings are reviewed for an abuse of discretion." Durtsche v. American Colloid Co., 958 F.2d 1007, 1011 (10th Cir.1992) (citation omitted). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." United States v. Ortiz, 804 F.2d 1161, 1164 n. 2 (10th Cir.1986).
 
 
 12
 In relevant part, Rule 404(b) provides that although evidence of "other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," such evidence may be admissible "for other purposes, such as proof of ... knowledge ... or absence of mistake." Moreover, "[e]xtrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." Huddleston v. United States, 485 U.S. 681, 685 (1988).
 
 
 13
 Defendant concedes that in United States v. Morales-Quinones, 812 F.2d 604 (10th Cir.1987), we "appeared to endorse the method employed by the trial judge in the instant case." Defendant argues, however, that his prior conviction does not satisfy the admissibility requirements articulated in Morales-Quinones.[3] This argument is without merit.
 
 
 14
 In Morales-Quinones, we held that prior conviction evidence must meet four requirements for admissibility under Rule 404(b):
 
 
 15
 [The evidence] (1) must tend to establish ... knowledge ... or absence of mistake or accident; (2) must also be so related to the charge that it serves to establish ... knowledge ... or absence of mistake or accident; (3) must have real probative value, not just possible worth; and (4) must be close in time to the crime charged."
 
 
 16
 812 F.2d at 612 (citation omitted). Defendant's prior conviction meets each of these requirements. First, the conviction tends to establish his familiarity with narcotics and his potential knowledge of the marijuana found in his van. Second, the conviction involves the same type of criminal activity at issue here, possession of narcotics. Third, the conviction contains real probative value by virtue of its similarity to the criminal conduct now charged. Finally, the conviction occurred less than three years before defendant's indictment in the instant case. Thus, the introduction of his prior conviction to show knowledge and absence of mistake was proper under Rule 404(b) and Morales-Quinones, in light of defense counsel's opening remark that defendant knew nothing about the marijuana.
 
 
 17
 We are further unpersuaded that the admission of the conviction evidence forced defendant to make a "tactical" decision to testify. Because defense counsel had told the jury Mr. Simms did not know the van contained marijuana, and because the evidence to back that statement could only have come from Mr. Simms, it is logical to assume the decision for him to testify had been made long before the district court's ruling.
 
 
 18
 Though defendant freely admits he did not request a limiting instruction, he nonetheless claims the district court's failure to independently provide one "constitutes plain and reversible error." According to defendant, limiting instructions are "an element of such significance that the fairness of the trial process must be questioned if evidence of prior convictions are [sic] allowed without cautioning the jury on their [sic] limited use." Because no limiting instruction was given, defendant contends his conviction "could be the result of the jury's unrestricted consideration of his prior criminal ways."
 
 
 19
 "In order to appeal the propriety of a given jury instruction or the refusal to give a suggested jury instruction, a defendant must make a specific objection in the district court." United States v. Barbee, 968 F.2d 1026, 1032 (10th Cir.1992). See also Fed.R.Crim.P. 30 (With respect to jury instructions, "[n]o party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."). Because defendant failed to request a limiting instruction or object to the absence of one, "we review the record only for plain error." Barbee, 968 F.2d at 1032.
 
 
 20
 Defendant's contention that the district court was required to independently provide a limiting instruction is meritless. Fed.R.Evid. 105 expressly states that when a court admits evidence admissible for one purpose but not another, as with Rule 404(b), "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." (emphasis added). As the Supreme Court noted in Huddleston:
 
 
 21
 We share petitioner's concern that unduly prejudicial evidence might be introduced under Rule 404(b).... We think, however, that the protection against such unfair prejudice emanates not from a requirement of a preliminary finding by the trial court, but rather from ... Federal Rule of Evidence 105, which provides that the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.
 
 
 22
 485 U.S. at 691-92 (citation omitted) (emphasis added). Nowhere does Rule 105 require a court to provide a sua sponte limiting instruction. Nor does defendant cite any case law to support his position. Clearly the district court did not abuse its discretion, let alone commit plain error.
 
 
 23
 Defendant filed a notice and request for downward departure under 18 U.S.C. § 3553(b) and U.S.S.G. §§ 5H1.3 and 5H1.4, alleging extraordinary physical, mental, and emotional conditions. Attached to defendant's request were physician and psychiatrist statements documenting the following alleged "extraordinary impairments": chronic osteoarthritis, a history of malignant melanoma, and chronic psychiatric illness. The district court reviewed and rejected defendant's request on the ground that it was "without merit." Defense counsel then asked the court whether its ruling was based on an exercise of discretion or a finding that the request lacked legal merit. The court replied, "Well, it does not meet the criteria for a downward departure. Based on his physical condition, that was taken into consideration by the Sentencing Commission."
 
 
 24
 On appeal, defendant concedes that a trial court's discretionary refusal to depart downward is not reviewable by this court. However, he maintains the district court's ruling violated 18 U.S.C. § 3553(a) because the ruling imposed a sentence greater than necessary to meet the sentencing purposes of 18 U.S.C. § 3553(a)(2) (i.e., retribution, deterrence, incapacitation and rehabilitation).[4] Thus, defendant argues that the court's refusal to depart downward is appealable under 18 U.S.C. § 3742(e)(1) as a "violation of law." Alternately, defendant claims the ruling is reviewable under 18 U.S.C. § 3742(e)(2) because the court's "legal" conclusion that the sentencing guidelines already accounted for his medical condition constituted "an incorrect application of the sentencing guidelines." Thus, he urges "a limited remand for directing the district court to rule on the merits" of his request for downward departure.
 
 
 25
 "This court reviews sentences imposed under the Sentencing Guidelines according to the statutory standard provided by the Sentencing Reform Act of 1984 and codified at 18 U.S.C. § 3742." United States v. Davis, 900 F.2d 1524, 1528 (10th Cir.), cert. denied, 111 S.Ct. 155 (1990) (quoting United States v. Smith, 888 F.2d 720, 723 (10th Cir.1989), cert. denied, 494 U.S. 1068 (1990)). Section 3742(e) expressly provides that
 
 
 26
 [t]he court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.
 
 
 27
 (emphasis added). Moreover, "it is settled law in this circuit that section 3742 does not grant appellate jurisdiction over a trial court's discretionary refusal to depart downward from the [sentencing] guidelines," unless the trial court "erroneously believe[d] the guidelines do not permit a downward departure." United States v. Soto, 918 F.2d 882, 883-84 (10th Cir.1990). See also Davis, 900 F.2d at 1530; United States v. Spedalieri, 910 F.2d 707, 710 (10th Cir.1990); United States v. Gines, 964 F.2d 972, 976 (10th Cir.1992), cert. denied, --- U.S. ----, No. 92-6747, 1992 WL 368734 (Jan. 11, 1993). Thus, "[t]he determination of whether a downward departure is warranted ... is committed to the sound discretion of the trial judge." United States v. Bromberg, 933 F.2d 895, 897 (10th Cir.1991).
 
 
 28
 Here, the district court "reviewed" defendant's request, which clearly indicates the court believed it had discretion to depart downward. Cf. United States v. Slater, 971 F.2d 626, 634 (10th Cir.1992) (remand necessary where district court erroneously held it was without authority under U.S.S.G. § 5H1.4 to depart from the sentencing guidelines). Exercising its discretion, the court concluded defendant's request was "without merit" because the request did "not meet the criteria for a downward departure." Cf. United States v. Fox, 930 F.2d 820, 824 (10th Cir.) (partial remand required where district court never finished stating its reasons for refusing to depart downward after being interrupted by counsel), cert. denied, 112 S.Ct. 218 (1991). Defendant's § 3742(e)(2) argument is similarly unpersuasive. The district court's statement that his physical condition had been "taken into consideration by the Sentencing Commission" simply cannot be interpreted to mean the court believed it lacked discretion to depart downward. Rather, the court's statement is entirely consistent with the fact that mental, emotional, and physical conditions are "not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. §§ 5H1.3, 5H1.4. Because the district court exercised discretion in denying defendant's request for downward departure, we have no jurisdiction to evaluate the propriety of the court's ruling.
 
 
 29
 AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Defendant does not contest the voluntariness of his consent
 
 
 [2]
 The court based its ruling on United States v. Rubio-Rivera, 917 F.2d 1271 (10th Cir.1990)
 
 
 [3]
 Defendant suggests two other grounds for distinguishing Morales-Quinones, each of which is unpersuasive. First, defendant's contention that Morales-Quinones "elected not to testify" while he was "forced" to testify is fatuous. Indeed, the fact that Morales-Quinones chose not to testify only illustrates that here defendant testified of his own volition. Second, defendant's argument that counsel's opening statement in Morales-Quinones "was far more specific in terms of the defendant's lack of knowledge ... than any assertion by defense counsel here" cannot be evaluated because defendant's brief does not reveal precisely what defense counsel said, and counsel's opening statement is not part of the record submitted on appeal
 
 
 [4]
 Specifically, defendant claims his "extraordinary medical condition created conditions of confinement substantially harsher than those whose crime was similarly situated but who did not experience as dire a medical condition." According to defendant, the district court's failure "to take into account" his condition "exacted a higher punishment than necessary in terms of retribution, incapacitation and deterrence."